# Abram R. Cox's Estate.   Robert T. Potts, by his next friend, W. W. Potts's Appeal.

*Will—Issue devisavit vel non—Testamentary capacity.*

On a petition for an issue devisavit vel non the contestants called four witnesses, one of whom testified that he had been in the employ of the testator in the mornings, and that he had to help the testator in the morning from the train to his place of business.   He stated that testator had not been capable of any prolonged mental effort, though he admitted that he could "understand for a little while."   He also admitted that testator had signed all checks, although they were otherwise filled in by the witness, and that he knew the various persons employed in his business. The second witness stated that he did not know testator until a year after the execution of the will.   His testimony was substantially the same as the first witness.   The other two witnesses were physicians who stated that testator was without testamentary capacity, but they were unable to give a single instance in which they had heard him utter a foolish, insane, or incoherent remark.   Fifteen witnesses for the proponent testified to facts strongly bearing upon testator's testamentary capacity.   They testified that testator was nearly blind, that he was suffering from Bright's disease, which caused him great depression of spirits, but that he was able to go about unattended almost to the time of his death; that he was the director of a bank, and was re-elected each year of his life, that he usually attended the directors' meetings and voted intelligently; that he knew his acquaintances, recognizing them by their voices, and that he talked with them rationally on the topics of ordinary conversation, without the least indication of mental incapacity; that the will was prepared by an eminent attorney, from instructions given by the testator himself; that the will was read to him, and fully understood at the time it was executed.   *Held*, that an issue was properly refused.

Argued April 5, 1895. Appeal, No. 123, Jan. T., 1895, by Robert T. Potts, by his next friend W. W. Potts, from decree of O. C. Phila. Co., Oct. T., 1891, No. 128, dismissing appeal from register of wills, and refusing an issue devisavit vel non. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from register of wills.

The facts of the case appear by the opinion of the auditing judge, PENROSE, J., which was as follows:

" The petition upon which the appeal is founded alleges that at the time it was filed the only persons interested in the estate of the decedent were his son, Abram R. Cox, a brother, Dickson Cox, and a grandson, Robert T. Potts (the appellant), son of Caroline E. Potts, a deceased daughter. The grounds of the appeal are want of testamentary capacity and the procurement of the will by the undue influence and coercion of Caroline E. Cox (the wife of the testator) and others not named.

. " The appeal was originally taken Oct. 23, 1893, by E. Channing Potts, the father of Robert T. Potts, as his next friend. . . .

" The testator died Feb. 5, 1890, and on the 20th of February, 1890, his will, dated Aug. 24, 1887, was admitted to probate upon the petition of the executors named therein, Caroline E. Cox, Abram R. Cox and E. Channing Potts, averring, under oath, that it was his last will and testament, and that the value of his personal estate was $200,000, and of his real estate, $75,000. . . .

" Without stopping to consider the question of estoppel or election, it is obvious that after permitting so long a time to pass after the probate, the person who now alleges the invalidity of the will ought to be able to support his attack by evidence of the most conclusive and satisfactory character, especially if he has delayed until the person most directly affected has died.

" The evidence offered falls very short of this. Four witnesses, only, testified on behalf of the appellant; and of these one did not make the acquaintance of the testator until a year after the execution of the will. Of the other three, two were physicians, who, while they asserted with considerable positiveness their opinions that he was without testamentary capacity,

admitted that they had never attended him professionally, and
that their knowledge was derived from casual meetings with
him, during which they had never attempted to talk with him
upon business or to test the extent of his ability to carry on a
conversation.   These gentlemen were offered as experts, and
they were unable to give a single instance in which they had
heard him give utterance to a foolish, insane or incoherent
remark—though one of them declared that he was 'blind, par-
alyzed and demented.'   To what extent this assertion was war-
ranted by the facts will appear hereafter.   The other witness
of the three referred to had been in the testator's employ for a
number of years as manager or superintendent of his business,
which was that of ale and porter brewing at Norristown.   He
also expressed an opinion adverse to the ability of the testator
to make a will, to take care of himself, or to attend to his
affairs ; and he testified that a former will, prepared by Mr.
Hunsicker, not being satisfactory to the testator's wife, she had
taken him to a relative of hers, a lawyer in Trenton, by whom
the present will was prepared, and that when it was sent from
Trenton the testator declared that he did not understand it,
and fell asleep while the witness was trying to read it to him.
This witness, though he said that the testator always had to
have an attendant while coming from a train in Norristown to
the brewery—a distance so short that the witness was able to
see him upon his arrival to go to meet him—admitted that he
came from Philadelphia every day by himself and that he
probably was unassisted in going to and from his house at Nine-
teenth and Spring Garden to the station at Ninth and Green.
He also admitted that all checks in the course of the business
were signed by the testator—though prepared by the witness ;
that he knew the various persons employed at the brewery and
their duties ; and that he could 'understand for a little while,'
though he was not capable of any prolonged mental effort, etc.

  " The fourth witness, whose acquaintance with the testator,
as stated above, began a year after the execution of the will,
was also in his employ as manager, and his testimony was of
much the same character as that of his predecessor, except
that while the latter, in support of his assertion of want of tes-
tamentary capacity, referred to some instances of lewd behavior
on the part of the testator, the former spoke only of his fond-

ness for, and keen appreciation of, stories of a salacious character.

" All of this evidence, if uncontradicted, would not be sufficient to overcome the presumption in favor of the testamentary capacity; but it was opposed by the testimony of fifteen witnesses, stating facts, not mere opinions, which leaves not the least doubt upon the subject.

" It appeared that about 1881 the testator, finding his vision becoming impaired, consulted an occulist, who told him that nothing could be done to relieve him, as his trouble was caused by Bright's disease, from which he was suffering.   This information naturally gave him great distress and caused him to constantly brood over his condition.   As the disease progressed his eyesight failed still more, though it does not appear that he ever became totally blind.   His nervous system was also much affected; his lower limbs were to some extent paralyzed, and he walked with a shuffling, unsteady step; occasionally falling if not supported by the person accompanying him.   He suffered with attacks of depression, and when in great pain or distress at times manifested his emotion by shedding tears.   But he continued to go about, often unattended, almost to the time of his death.   He was a director of one of the banks of Norristown and was re-elected each year of his life; knew of the days of meeting and was usually in attendance, voting intelligently upon the questions submitted for consideration by the board. He knew his acquaintances and called them by name when he met them, recognized their voices where, on account of his defective sight, he failed to see them before they had spoken; and he talked with them, rationally and without the least indication of mental incapacity, upon the topics of ordinary conversation.

" The will was not drawn, as asserted by one of the witnesses on the part of the appellant, by a relation of Mrs. Cox. It was drawn by A. G. Richey, Esq., a lawyer of the highest standing, of the Trenton bar, from instructions given directly to him by the testator, to whom, when prepared, it was read and fully explained, and by whom it was fully understood at the time of signing; and it is by no means clear that Mrs. Cox, who was with him at the time, derived a greater benefit under the will than she would have had under the intestate laws.

Moreover, Mr. Hunsicker, who is said to have prepared a prior will which this one supersedes, and who certainly was well able to judge of his testamentary capacity, became counsel for the executors, and acted in the settlement of the estate in accordance with the provisions of the will now the subject of contest, from the time of its admission to probate until at least the application for leave to sell the Spring Garden street house in March, 1892, after the death of Mrs. Cox in the preceding December.

" No verdict against the validity of this will would be permitted to stand. The issues are therefore refused and the appeal dismissed.

The court overruled exceptions to the opinion of the auditing judge, and entered a decree dismissing the appeal.

*Error assigned* was decree as above.

*W. W. Wiltbank, N. H. Larzelere* with him, for appellant, cited: Miller's App., 159 Pa. 562; Stapleton v. Stapleton, 1 Atkyns' Rep. 2; Peachy v. Duke of Somerset, 1 Strange, 447; Holland v. Kindregan, 155 Pa. 160; Knauss' App., 114 Pa. 10; Sharpless' Est., 134 Pa. 250; Shaver v. McCarthy, 110 Pa. 339.

*John G. Johnson,* for appellee.

PER CURIAM, April 22, 1895:

Referring to the insufficiency of the evidence in this case, the learned auditing judge in the conclusion of his opinion, rightly said: " No verdict against the validity of this will would be permitted to stand." He therefore refused the issues prayed for and dismissed the appeal from the decision of the register of wills. In this he was sustained by the court in banc. All that can be profitably said on the questions involved, will be found in the clear and satisfactory opinion above referred to, and on it we affirm the decree.

Decree affirmed and appeal dismissed with costs to be paid by appellant.